UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND SPRIGGS, an individual,<br>　　　　　　　　　　　　Plaintiff,<br>v.<br><br>THE CITY OF SAN DIEGO; SAN DIEGO POLICE DEPARTMENT; OFFICER CAMERON WATSON; and DOES 1–50,<br>　　　　　　　　　　　　Defendants. | Case No.:  24-cv-01006-W-KSC<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT [DOC. 9]** |

　　　Pending before the Court is the City of San Diego (the "City") and Officer Cameron Watson's motion to dismiss ([Doc. 9], "Motion") Plaintiff Raymond Spriggs's ("Plaintiff") first amended complaint ([Doc. 3], "FAC") in its entirety.  Plaintiff opposes ([Doc. 11], "Opposition") and the City and Officer Watson have replied ([Doc. 12], "Reply").

　　　The Court decides the matter on the papers submitted and without oral argument. *See* CivLR 7.1(d)(1).  For the following reasons, the Court **GRANTS** the Motion.

I. **RELEVANT BACKGROUND**

This case arises from two separate traffic stops performed by San Diego Police Department ("SDPD") officers on Plaintiff, both of which Plaintiff alleges were the result of racial bias. (*FAC* at ¶¶ 8–17.)

First, Plaintiff—a "Black man over the age of fifty"—alleges that on January 9, 2022, SDPD officers, including Officer Watson, pulled over Plaintiff's vehicle (although, on this occasion Plaintiff was only a passenger) "under the guise of [having] [illegally] tinted windows". (*Id.* at ¶¶ 9–11.) In the ensuing traffic stop, Plaintiff alleges that SDPD officers searched the vehicle after claiming they "saw marijuana"—a claim that Plaintiff alleges "was false." (*Id.* at ¶ 11.) Plaintiff then alleges that he and the driver were arrested and criminally charged, but that the chares ultimately dropped on August 11, 2022. (*Id.*) Plaintiff does not indicate what they were arrested for and charged with. (*See id.*)

Second, in March of 2023, Plaintiff alleges that he was again pulled over by SDPD officers while in his vehicle (this time, as the driver) on suspicion of having illegally tinted windows. (*Id.* at ¶ 12.) During the stop, Plaintiff consented to a search of his vehicle before being let go without receiving a citation. (*Id.*) However, Plaintiff alleges that he only consented to the search out of "fear of further retaliation or even being injured by the police." (*Id.*)

Plaintiff goes on to allege that since the March 2023 traffic stop, he has observed SDPD officers "sitting in their patrol vehicles near his home, staring at his residence, clearly for the purpose of intimidating him." (*Id.* at ¶ 13.)

Plaintiff alleges that the two traffic stops were the result of "racial profiling" and that the SDPD officers did not actually have "reasonable suspicion or probable cause" for the stops, searches, or arrest. (*Id.* at ¶¶ 21, 28, 39, 46, 53–54, 57.) Plaintiff further alleges that he has suffered "economic" damages and "severe emotional distress" because of the two stops and subsequent "intimidat[ion]" tactics. (*Id.* at 14.)

To that end, Claims 1 and 2 assert Section 1983 claims against Officer Watson and Does 1–50 (who plaintiff alleges are also SDPD officers) for both "False Arrest" and "False

Imprisonment." (*Id*. at ¶¶ 18–30.) Claims 3 through 6 assert Section 1983 violations against the City and the policy-making Doe defendants (Does 26–50) under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978) ("*Monell*") for: "Failure to Properly Screen and Hire" SDPD officers; "Failure to Properly Train" SDPD officers; and "Failure to Properly Supervise and Discipline" SDPD officers. (*Id*. at ¶¶ 31–55.) Claim 7 asserts an intentional infliction of emotional distress ("IIED") tort claim against the City, Officer Watson, and Does 1–50. (*Id*. at ¶¶ 526–59.) While Claim 8 asserts that the City, Officer Watson, and Does 1–50 violated Plaintiff's constitutional rights in contravention of California Civil Code § 52.1 (the "Bane Act"). (*Id*. at ¶¶ 60–67.)

The City and Officer Watson now move to dismiss the FAC in its entirety, arguing that: (1) the January 9, 2022 stop is outside the statute of limitations (*Motion* at 7–8); (2) Plaintiff fails to allege a sufficient constitutional violation stemming from either traffic stop (*Id.* at 8–9); (3) Plaintiff's *Monell* claims does not allege a "pattern of similar conduct" nor identify any constitutionally deficient practices (*Id.* at 9–11, 12–15); (4) Plaintiff has not alleged any "extreme or outrageous conduct" regarding his IIED claim (*Id.* at 11); and (5) Plaintiff's Bane Act claim fails to sufficiently allege an intentional constitutional violation (*Id.* at 12).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) ("Rule 12"). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Additionally, in evaluating the motion, the Court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) ("Rule 8"). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). While well-pled allegations in the complaint are assumed true, a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## III.  DISCUSSION

### A.  Section 1983 Claims (Claims 1 and 2)

Plaintiff's first two claims allege direct Section 1983[1] liability against Officer Watson and Does 1–50 (who Plaintiff alleges are also SDPD officers) for violating Plaintiff's Fourth Amendment rights against unreasonable searches and seizures by conducting the two traffic stops without "probable cause or reasonable suspicion." (*FAC* at ¶¶ 21, 26.)

While there is little doubt that, as alleged, Plaintiff was "seized" within the meaning of the Fourth Amendment during both the January 2022 and March 2023 traffic stops, the questions of whether the January 2022 traffic stop occurred within the statute of limitations and whether Plaintiff has sufficiently alleged that the stops, searches, and arrest were "unreasonable" remain. *See Brendlin v. California*, 551 U.S. 249, 257 (2007) (holding that

---

[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

the drivers and passengers of vehicles are all "seized" within the meaning of the Fourth Amendment during a traffic stop and allowing passenger to challenge the constitutionality of the stop because "[a] traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver . . . .").

   1. **The January 2022 Traffic Stop Falls Within The Statute of Limitations**

The statute of limitations for Section 1983 claims, as well as any tolling thereof, is governed by state law. *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 740 (9th Cir. 2020). Federal courts in California have held that the statute of limitations for a Section 1983 claim is two years because California has a two-year statute of limitations for actions involving "assault, battery, or injury." *Id*. (citing Cal. Code Civ. Proc. § 335.1).

The City and Officer Watson argue that the events of the January 9, 2022 traffic stop fall outside the statute of limitations because they occurred more than two years before this case was initially filed in state court—March 11, 2024. (*Motion* at 7–8; *see* [Doc. 1-2], at 2.) While March 11, 2024 is indeed more than two years after January 9, 2022, the City and Officer Watson overlook California Government Code Section 945.3, which states that:

> No person charged . . . [with] a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court. Any applicable statute of limitations for filing and prosecuting these actions *shall be tolled during the period that the charges are pending before a superior court*.

Cal. Gov't Code § 945.3 (emphasis added); *see Lockett*, 977 F.3d at 740-42 (holding that the statute of limitations for Section 1983 claim arising from an arrest tolled until the dismissal of charges stemming from said arrest).

Here, Plaintiff alleges that the charges brought against him regarding the January 9, 2022 traffic stop were not dismissed until August 11, 2022. (*FAC* at ¶ 9.) Thus, any claims Plaintiff might have stemming from the January 22 traffic stop tolled until August 11, 2022. Indeed, had Plaintiff tried to bring this case before August 11, 2022, the City and Office Watson would have surely moved to dismiss citing Section 945.3. Seeing as August 11, 2022 is less than two years before March 11, 2024, any claims arising from the January 9, 2022 traffic stop are not barred by the statute of limitations.

    **2.**    **Plaintiff Has Not Sufficiently Alleged that the January 2022 and March 2023 Traffic Stops Were "Unreasonable"**

"A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (citations omitted).

    **a)**    **January 2022 Traffic Stop**

The Court addresses whether Plaintiff has alleged any constitutional violations regarding the stop, search, and arrest that took place during January 9, 2022 traffic stop.

First, police may conduct traffic stops based on "individualized 'reasonable suspicion' of unlawful conduct." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Whren v. United States,* 517 U.S. 806, 809–10 (1996) and *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)); *accord Rodriguez v. United States*, 575 U.S. 348, 348 (2015). Determining if the officers in question had "reasonable suspicion" to initiate the traffic stop is an "objective" inquiry, concerned only with whether the stop was

"objectively reasonable" under the circumstances. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Courts may not delve into "concerns about improper motives and pretext" such a "racial profiling" to invalidate otherwise lawful stops. *Ashcroft v. al-Kidd*, 563 U.S. 731, 739 (2011) (citing *Whren*, 517 U.S. at 812).

Here, Plaintiff alleges that SDPD officers pulled over the vehicle on January 9, 2022, "under the guise of [illegally] tinted windows." (*FAC* at ¶ 11.) But that in reality, the officers did "not hav[e] either probable cause or reasonable suspicion" and suggests that the stop was the result of "racial profiling" tactics. (*Id.* at ¶¶ 28, 39, 46, 54.) The problem for Plaintiff is that putting aside—as the Court must—his conclusory allegations that the officers did "not hav[e]" reasonable suspicion and that there was "no lawful basis" for the stop, the FAC contains no factual allegations that, taken as true, would render the stop objectively unreasonable. (*Id.* ¶ 28-29) For instance, at no point does Plaintiff allege that the vehicle's windows were of legal tint. *See* Cal. Veh. Code § 26708(a) ("A person shall not drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied upon the windshield or side or rear windows"). The closest Plaintiff comes to this is his allegation that "no citations were issued" during the January 2022 stop. (*Id.* at ¶ 21.) However, just because officers do not issue a citation for the suspected unlawful conduct that prompted the stop does not necessarily mean that they lacked probable cause. Otherwise, every traffic stop that ended without a citation would give rise to a Section 1983 suit.

Second, police may conduct a warrantless search of a vehicle if "there is probable cause to believe that the vehicle contains evidence of a crime . . . ." *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). Probable cause to search a vehicle exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *United States v. Vasquez*, 2021 WL 3011997, at *1-2 (9th Cir. July 15, 2021) (quoting *Ornelas*, 517 U.S. at 696). Officers may obtain probable cause to search a vehicle during a traffic stop if they observe contraband in "plain view" inside the vehicle. *E.g.*, *United States v. Hood*, 493 F.2d 677,

680 (9th Cir. 1974) (holding that officer had probable cause to conduct search after shining flashlight into vehicle during a traffic stop and observing "vials of pills in plain view").

Meanwhile, "[p]robable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *See United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The Court's evaluation of probable cause, just like with reasonable suspicion, is an objective one made without regard for an officer's "subjective intent." *Whren*, 517 U.S. at 811-13.

While the possession of 28.5 grams or less of cannabis is no longer illegal in California, *see* Cal. Health & Safety Code § 11357(b), it is still illegal to operate a vehicle under the influence of cannabis (Cal. Veh. Code § 23152); to consume cannabis while driving or a passenger in a vehicle (Cal. Health & Safety Code § 11362.3(a)(7)-(8)); or to possess an "open container or package of cannabis" while "driving a motor vehicle" unless the cannabis is stored in the "trunk of the vehicle" (Cal. Veh. Code § 23222). Thus, an officer observing cannabis inside a vehicle may, in some circumstances, still provide probable cause to search the vehicle. *E.g.*, *Sellers v. Superior Ct. of Sacramento Cnty.*, 324 Cal. Rptr. 3d 650, 657 (2024) ("We conclude that the loose marijuana was contraband, and illegally transported, and thus find the search was proper."); *Vasquez*, 2021 WL 3011997, at *2 (citations omitted) ("Driving under the influence of marijuana is a misdemeanor in California and thus an officer's reasonable belief that a vehicle contains evidence of that offense will support probable cause for a warrantless search."); *People v. Fews*, 27 Cal. App. 5th 553, 563-64 (2018) (holding that officer observing driver holding "half-burnt" cigar, smelling cannabis odor, and the driver admitting that the "half-burnt" cigar contained cannabis provided probable cause to search vehicle, the driver, and a passenger even after the passage of Proposition 64).

Here, the FAC alleges that Officer Watson and the Doe SDPD officers searched the vehicle on January 9, 2022 after one of the Doe SDPD officers "said he saw marijuana [in

the vehicle]; this was false. A search of the vehicle ensued and PLAINTIFF was detained and arrested. Criminal charges were brought but then dropped due to . . . the illegal nature of the search." (*FAC* at ¶ 11.) This is the full extent of Plaintiff's allegations regarding the supposed unreasonableness of the search and arrest January 9, 2022. Similar to his allegations regarding the reasonableness of the initial stop on January 9, 2022, these allegations are far too vague and conclusory for the Court to objectively evaluate whether probable cause did or did not exist for the search and arrest. For example, Plaintiff does not allege whether there actually was cannabis in the vehicle, what was found during the search, or what Plaintiff was arrested for/charged with. Furthermore, the charges being "dropped" against Plaintiff does not necessarily mean that the search and arrest were unlawful. Otherwise, a Section 1983 claim would exist every time any charges were dropped against a criminal defendant. Simply put, Plaintiff needs to provide more detailed factual allegations regarding the search and arrest that occurred on January 9, 2022 and what Plaintiff believes rendered them unreasonable.

### b)      March 2023 Traffic Stop

Next, the Court addresses whether Plaintiff has sufficiently alleged any constitutional violations regarding the stop and search that took place during the March 2023 traffic stop.

With regards to the March 2023 traffic stop, Plaintiff alleges that Doe SDPD officers pulled him over in March 2023 for having "allegedly tinted windows" but eventually let him go "without any sort of citation." (*FAC* at ¶ 12.) Plaintiff further alleges that during the March 2023 stop, the Doe SDPD officers asked Plaintiff if they could search his vehicle, to which he consented. (*Id.*) However, Plaintiff now asserts that he only consented to the search due to "fear of further retaliation or even being injured." (*Id.*)

Just like Plaintiff's allegations regarding the January 2022 traffic stop, these allegations are far too vague and conclusory for the Court to determine whether the Doe SDPD officers lacked reasonable suspicion for the March 2023 traffic stop. Plaintiff does not allege whether the vehicle's windows were actually of legal tint and the officers'

decision to ultimately not issue Plaintiff a ticket does not mean that they necessarily lacked reasonable suspicion to initiate the stop altogether.

As for the March 2023 vehicle search, the Court notes that "[a] search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). And while this consent must be voluntary, Plaintiff makes no factual allegations indicating that the SDPD officers coerced Plaintiff in any way. Indeed, Plaintiff does not allege that any of the officers had their guns drawn, threatened to obtain a warrant, or otherwise too took any actions or made any statements to intimidate Plaintiff during this public traffic stop. *See United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009). Nor were the officers under any obligation to inform Plaintiff of his right to refuse the search or *Mirandize* Plaintiff during this traffic stop. *See id.* Plaintiff's subjective "fear" about what would happen if he declined the search request is not, by itself, enough to invalidate his consent.

### c) SDPD Conduct Outside of the Traffic Stops

Lastly, the Court briefly addresses the alleged conduct of the Doe SDPD officers Plaintiff complains of outside of the two traffic stops. While Claims 1 and 2 do not explicitly assert Section 1983 claims arising from conduct outside of the two traffic stops, the FAC's initial factual allegations section does assert that since the March 2023 traffic stop, Plaintiff has observed SDPD officers "sitting in their patrol vehicles near his home, staring at his residence, clearly for the purpose of intimidating him." (*FAC* at ¶ 13.)

For the sake of completeness and any future amendments to the FAC, the Court simply notes that Plaintiff fails to point to any legal authority supporting the notion that police officers sitting in patrol vehicles on public streets is unconstitutional.

Accordingly, Claims 1 and 2 must be dismissed in their entirety.

### B. *Monell* Claims (Claims 3-6)

Under *Monell v. Dep't of Soc. Servs. of City of New York*, municipalities such as the City cannot be held vicariously liable under Section 1983 for the actions of their employees. 436 U.S. at 692. Instead, "a municipality can be found liable under § 1983

only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).

Thus, to be liable under Section 1983 for a *Monell* claim, Plaintiff must show that either: (1) "a [municipal] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy"; or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Mendoza v. County of San Bernadino*, 2020 WL 2066142, at *6 (C.D. Cal. February 21, 2020) (*quoting Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).

To that end, Plaintiff alleges that the City and Does 26-50 are responsible for his constitutional rights being violated because they, as "a matter of custom, practice, and policy," failed to "properly screen and hire police officers"; failed to "maintain adequate and proper training for police officers in the department necessary to educate the officers as to the Constitutional rights of arrestees"; failed to properly "supervise and discipline police officers in order to prevent consistent and systematic use of inappropriate, intimidation, retaliation, and racially-profiling tactics"; and also "maintained a custom, policy, or practice" of "making inappropriate and illegal traffic contacts despite lacking reasonable suspicion or probable case." (*FAC* at ¶¶ 31-55.)  However, the problem with Plaintiff's *Monell* claims is three-fold.

First, all four *Monell* claims require Plaintiff to have suffered an underlying "constitutional violation." *Lockett*, 977 F.3d at 742 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63 (2007)) ("[T]here can be no *Monell* claim . . . without an underlying constitutional violation by the officers, the peace officer's conduct in violation of the Constitution here becomes the "necessary logical condition" to formulating a *Monell* claim."); *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) ("Exoneration of

[the officer] of the charge of excessive force precludes municipal liability for the alleged unconstitutional use of such force."). And, as already discussed above, Plaintiff has not sufficiently alleged any constitutional violations with respect to the either the January 2022 Stop, the March 2023 Stop, or otherwise. Accordingly, all of Plaintiff's alleged *Monell* claims necessarily fail.

Second, Plaintiff does not actually allege what he believes is deficient about the City's screening/hiring, training, and supervision/disciple practices—nor does he allege any facts showing a custom, policy, or practice of SDPD officers improperly acting without probable cause or reasonable suspicion. The closest Plaintiff comes to on this issue is pointing to: (1) a 2016 study by San Diego State University that concluded SDPD officers were more likely to search and question Black and Hispanic people after being stopped; (2) a 2019 NBC San Diego study which shows that the "San Diego City Attorney's office" is five times more likely to prosecute black people for "minor offenses"; (3) data from the National Justice Database City Report on the SDPD showing that Black people are more likely to be searched after being stopped than white citizens; and (4) a study from group called "Police Scorecard" concluding that SDPD officers stop Black people "at a rate more than 2x higher than white people and were more likely to search, arrest, and use force against black people during a stop." (*FAC* at ¶¶ 9-15.) This is not the first time Plaintiff's counsel (the Pride Law Firm) has raised these studies kinds of studies to this Court in support of a *Monell* claim. In *Piccini v. City of San Diego*, attorneys from the Pride Law Firm represented three Black men in an excessive force lawsuit against the City wherein plaintiffs filed, among other things, a *Monell* claim against the City with regards to the SDPD's use of force policy and pointed to the same 2016 SDSU and the 2019 NBC San Diego studies relied on here. 2022 WL 2788753, at *4 (S.D. Cal. July 15, 2022) (Whelan, J.). In dismissing the *Monell* claim, the Court reasoned that "[w]hile both studies suggest the SDPD discriminates based on race and color with regard to traffic stops and prosecutions, the studies do not involve the issue of excessive force or insufficient training . . . ." *Id*.

Here, much like in *Piccini*, the studies alleged in the FAC do seem to suggest that "the SDPD discriminates based on race and color with regard to traffic stops," searches, and arrests. However, the studies do not identify what is allegedly deficient about the City's screening/hiring, training, and supervision/disciple practices nor connect the disparities in stops, searches, and arrests to SDPD officers acting without reasonable suspicion or probable cause. *See Ashcroft*, 563 U.S. at 739 ("Our unanimous opinion [in *Whren*] held that we would not look behind an objectively reasonable traffic stop to determine whether racial profiling or a desire to investigate other potential crimes was the real motive."). To be clear, the Court is *not* holding the kinds of studies Plaintiff cites can *never* be used to establish a pattern or practice for *Monell* claims or put municipalities like the City on notice of constitutionally deficient practices; but that as alleged here, these specific studies do not link the racial disparity in stops, searches, and arrests to any of the conduct Plaintiff complains of (i.e., alleged deficiencies in the City's screening/hiring, training, and supervision/disciple practices or SDPD officers conducting stops, searches, and arrests without reasonable suspicion or probable cause).

Third, "[a] *Monell* claim is, by definition, one brought against a public entity alone." *Hernandez v. San Bernadino County*, 2023 WL 3432206, at *5 (C.D. Cal. January 26, 2023) (*citing Monell*, 436 U.S. at 689 n.55); *see Patino v. Cnty. of Monterey*, 2023 WL 375349, at *4 (N.D. Cal. Jan. 24, 2023) ("*Monell* claims cannot be asserted against Moving Parties in their individual capacities. Any *Monell* claims against Moving Parties in their official capacities are duplicative of [plaintiff's] *Monell* claims against [the jail]. Accordingly, any *Monell* claims asserted against Moving Parties will be dismissed without leave to amend."); *see also Sanchez v. Cnty. of Los Angeles,* 2020 WL 9074714, at *4 (C.D. Cal. Apr. 28, 2020) ("a 'suit against Sheriff Villanueva in his official capacity is equivalent to a suit against County.'").

Accordingly, Plaintiff's *Monell* claims must be dismissed with prejudice as to Does 26–50 and without prejudice as to the City.

### C. IIED Claim (Claim 7)

To state a valid IIED claim under California law, a plaintiff must allege, among other things, "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *E.g.*, *Miller v. Fortune Comm. Corp.*, 15 Cal. App. 5th 214, 228–29 (2017). "A defendant's conduct is 'outrageous' [only] when it is so 'extreme as to exceed all bound of that [which is] usually tolerated in a civilized community.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 150-51 (2009). To that end, Plaintiff alleges that the City, Officer Watson, and Does 1-50 engaged in "outrageous conduct with an intent to or a reckless disregard of the probability of causing PLAINTIFF to suffer emotional distress" by stopping, searching, and detaining Plaintiff "without reasonable suspicion or probable cause." (*FAC* at ¶¶ 56-59.)

However, as discussed above, Plaintiff has not adequately alleged that the complained of stops, searches, or arrest were unconstitutional. Police officers conducting constitutionally permissible traffic stops, searches, and arrests certainly does not "exceed all bounds of that [which is] usually tolerated in a civilized community." *See Malnes v. City of Flagstaff*, 710 F. App'x 764, 765 (9th Cir. 2018) ("[Plaintiff] fails to state a claim for intentional infliction of emotional distress because his arrest . . . '[was] lawful,' and hence, could not constitute the 'extreme or outrageous' behavior required to establish the tort."); *Funk v. Town of Paradise*, 2015 WL 3794891, at *3 (E.D. Cal. June 17, 2015) ("Because the arrest was supported by probable cause and the use of force was reasonable, the officer's conduct cannot be wrongful or outrageous.").

Accordingly, Claim 7 must be dismissed in its entirety.

### D. Bane Act Claim (Claim 8)

The Bane Act creates civil liability for anyone who "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1. As such,

courts typically require Bane Act plaintiffs to allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) [that] the interference or attempted interference was by threats, intimidation, or coercion." *Sanchez*, 2020 WL 9074714, at *9 (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015)) (emphasis added).

Here, the FAC alleges that the City, Officer Watson, and Does 1-50 interfered with Plaintiff's Fourth Amendment during the two traffic stops, searches, and the arrest. (*FAC* at ¶¶ 60-67.) However, as discussed above, the traffic stops, searches, and arrest at issue—under the facts alleged by Plaintiff himself—were perfectly lawful.

Accordingly, Claim 8 must be dismissed in its entirety.

### E.  Leave To Amend

In its Opposition, Plaintiff asks the Court for leave to amend the FAC if the Motion is granted. (*Opposition* at 19.) Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." Furthermore, leave to amend "should be granted with 'extreme liberty'" and only be denied when "it is clear . . . that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).

Considering this circuit's preference for permitting amendment where not futile, the Court cannot conclude that Plaintiff could not alleged additional facts regarding a lack of probable cause/reasonable suspicion that, if true, would state valid Section 1983 claims (Claims 1 and 2), a valid IIED claim (Claim 7), and a valid Bane Act claim (Claim 8). Similarly, Plaintiff could theoretically make additional factual allegations regarding how the City's policies are constitutionally deficient and establishing a pattern of similar constitutional violations for purposes of stating valid *Monell* claims against the City (Claims 3-6). However, there are no facts Plaintiff could allege that could change the fact that only municipalities can be liable for a *Monell* claim.

Accordingly, all eight of Plaintiff's claims are dismissed with leave to amend—except for Plaintiff's *Monell* claims (Claims 3-6) as to Does 26-50, which are dismissed with prejudice.

If Plaintiff opts to amend his FAC, the factual allegations in his second amended complaint must be "consistent with" and may "not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

### IV.  Conclusion & Order

For the foregoing reasons, the Court **GRANTS** the Motion [Doc. 9]. Claims 1–2 and 6–7 are **DISMISSED WITH LEAVE TO AMEND**. Claims 3–6 are **DISMISSED WITH LEAVE TO AMEND** as to the City, and **WITHOUT LEAVE TO AMEND** as to Does 26–50. Plaintiff may file a second amended complaint on or before October 23, 2024.

**IT IS SO ORDERED**

Dated:  October 9, 2024

Hon. Thomas J. Whelan
United States District Judge