UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND SPRIGGS,<br><br>         Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO; OFFICER CAMERON WATSON; and DOES 1 through 50,<br><br>         Defendants. | Case No.:  24-CV-1006 W (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [DOC. 15]** |

Pending before the Court is Defendant's, City of San Diego (the "City"), Motion to Dismiss Plaintiff's, Raymond Spriggs, Second Amended Complaint ("SAC").  (*Mtn.* [Doc. 15].)  The Court decides the matter on the papers submitted and without oral argument.  *See* CivLR 7.1(d)(1).  For the reasons provided below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss.

I.   B<small>ACKGROUND</small>

On January 9, 2022, Mr. Raymond Spriggs, a Black man over 50 years-old, alleges he was sitting in a car in a parking lot waiting for his cousin to return from the store. (*SAC* [Doc. 14] at 3, ¶ 8.)  While waiting, Mr. Spriggs observed Officer Cameron Watson

and other officers staring at him, making him feel uneasy. (*Id.* at ¶ 10.) When his cousin returned, the two began driving away only to be immediately stopped by the officers who had been previously staring at Mr. Spriggs. (*Id.* at ¶ 11.)

Asserting that "illegally tinted windows" prompted the stop, the officers demanded to see Mr. Spriggs's identification. The SAC asserts that the windows were not illegally tinted. (*Id.*) At first, Mr. Spriggs refused to produce identification because he was a passenger. (*Id.*) However, one officer peered into the vehicle and claimed to see marijuana, which Mr. Spriggs asserts was untrue. (*Id.*) The officers arrested Mr. Spriggs and began searching the car. (*Id.*) Although he was arrested, no citation was issued for the allegedly illegally tinted windows and no charges were brought against Mr. Spriggs based on that incident. (*Id.*)

Then, in March 2023, Mr. Spriggs was pulled over again for allegedly illegally tinted windows. (*Id.* at 4, ¶ 12.) The SAC again asserts that the windows were not illegally tinted. (*Id.*) The officers asked for Mr. Spriggs's identification, which he provided. (*Id.*) However, the officers claimed they needed to perform a "safety" search of the vehicle. (*Id.*) Remembering the prior incident with police where he was detained and arrested, Mr. Spriggs alleges that he consented to the search out of fear of retaliation. (*Id.*) The officers conducted the search but did not find anything unlawful inside the car. (*Id.*) When the search turned up fruitless, the officers let Mr. Spriggs leave without revisiting the tinted windows issue. (*Id.*)

Since these two encounters with the police, Mr. Spriggs claims that on various occasions he has seen San Diego Police Department (SDPD) officers parked outside and staring at his home. (*Id.* at ¶ 13.) Mr. Spriggs believes that by patrolling and staring at his home, the officers are trying to intimidate him. (*Id.*) As a result of these incidents and the prior traffic stops, Mr. Spriggs claims that he has suffered economic and emotional injuries, including severe emotional distress, anxiety, stress, anger, trouble sleeping, mistrust of police, and humiliation. (*Id.* at ¶ 14.)

In response, on March 11, 2024, Mr. Spriggs brought various civil rights and tort claims against the City and various officers in the San Diego Superior Court. (*Complaint* [Doc. 1-2].) The City then filed a Notice of Removal to have the action heard in the United States District Court for the Southern District of California. (*Notice of Removal* [Doc. 1].) The Complaint was amended [Doc. 3], but this Court granted the City's Motion to Dismiss the FAC with leave to amend [Doc. 13]. Mr. Spriggs then filed the Second Amended Complaint [Doc. 14], and the City has moved to dismiss [Doc. 15].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) ("Rule 12"). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Additionally, in evaluating the motion, the Court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) ("Rule 8"). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). While well-pled allegations in the complaint are assumed true, a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable

inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### III. SECTION 1983 CLAIMS (CLAIMS 1 AND 2)

Mr. Spriggs has brought a False Arrest and False Imprisonment claim against Officer Watson and other DOE officers based on the two alleged traffic stops. (*SAC* at 8–9, ¶¶ 19–30.) Specifically, Mr. Spriggs asserts the traffic stops were unconstitutional searches and seizures under the Fourth Amendment. (*Id.* at 8, ¶¶ 21–22; 9, ¶¶ 29.) In response, the City has moved to dismiss these claims arguing that because Mr. Spriggs does not allege that he owned the car, he lacks Fourth Amendment standing to contest "the illegal search of his vehicle." (*Mtn.* [Doc. 15] at 7: 17–24.) Therefore, Mr. Spriggs has failed to state a claim that the traffic stops were unconstitutional. However, as explained below, the Supreme Court has held that a passenger is seized during a traffic stop and has standing to challenge the reasonableness of the stop. Therefore, Mr. Spriggs has standing to challenge the initial traffic stop under the Fourth Amendment.

#### i. FOURTH AMENDMENT

The Fourth Amendment prohibits unreasonable searches and seizures by the government. U.S. Const. amend. IV. "The Fourth Amendment 'applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.'" *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). "Even a brief traffic stop is a seizure within the meaning of the Fourth Amendment, and therefore is subject [] to the 'constitutional imperative' that it be reasonable under the circumstances." *United States v. Brooks*, No. CR 17-16-BU-DLC, 2018 WL 297572, at *3 (D. Mont. Jan. 4, 2018) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)).

"In order to satisfy the Fourth Amendment's strictures, an investigatory stop by the police may be made only if the officer in question has 'a reasonable suspicion [or

probable cause] supported by articulable facts that criminal activity may be afoot[.]'" *Montero-Camargo*, 208 F.3d at 1129 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "A traffic violation alone is sufficient to establish reasonable suspicion." *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006). Police may conduct traffic stops based on "individualized 'reasonable suspicion' [or probable cause] of unlawful conduct." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Whren*, 517 U.S. at 809–10 and *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)).

Determining if the officers in question had "reasonable suspicion" or "probable cause" to initiate the traffic stop is an "objective" inquiry, concerned only with whether the stop was "objectively reasonable" under the circumstances. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). However, courts may not delve into "concerns about improper motives and pretext" to invalidate otherwise lawful stops supported by reasonable suspicion or probable cause. *Ashcroft v. al-Kidd*, 563 U.S. 731, 739 (2011) (citing *Whren*, 517 U.S. at 812).

### ii.   ANALYSIS

The City argues that Mr. Spriggs's Fourth Amendment claims must be dismissed because he lacks standing to challenge the vehicle searches. Put simply, the City asserts that because Mr. Spriggs did not allege that he owned the vehicle in either traffic stop, he did not have "a reasonable expectation of privacy" or a property interest in them sufficient to trigger Fourth Amendment protections. (*Mtn.* at 7:17–20.) The City's argument is premised on a line of cases that hold that a passenger in a vehicle, without more, cannot contest the validity of a search under the Fourth Amendment because they lack a reasonable expectation of privacy in the vehicle. *See Rakas v. Illinois*, 439 U.S. 128, 149–50 (1978); *United States v. Schram*, 901 F.3d 1042, 1044 (9th Cir. 2018) (citations omitted) ("A person may not claim his Fourth Amendment rights have been violated if that person lacks a legitimate expectation of privacy in the premises searched."); *United States v. Thomas*, 447 F.3d 1191, 1199 (9th Cir. 2006) (unauthorized

driver of a rental car without permission from owner lacked standing to challenge search).

Although a mere passenger generally does not have standing to challenge a search, the City's argument is flawed because Mr. Spriggs is challenging the traffic stop as an unlawful seizure. The Supreme Court has explained that a passenger of a vehicle is seized during a traffic stop and has standing to challenge the reasonableness of the stop. *Brendlin v. California*, 551 U.S. 249, 251–52 (2007); *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (emphasis added) ("A lawful roadside stop begins when a vehicle is pulled over . . . for a traffic violation. The temporary seizure of driver *and passengers* ordinarily continues . . . for the duration of the stop."); *Villanueva v. California*, 986 F.3d 1158, 1166 (9th Cir. 2021) (internal citations omitted) ("[T]he Supreme Court held in *Brendlin* that when a traffic stop occurs the passenger is also seized, because during a traffic stop an officer seizes everyone in the vehicle, not just the driver."); *United States v. Bautista*, 484 F. App'x 142, 142–43 (9th Cir. 2012) (citations omitted) ("Law enforcement agents may briefly stop a moving automobile to investigate . . . . Such a stop is a Fourth Amendment seizure of everyone in the vehicle and each occupant has standing to challenge the stop."); *United States v. Macias-Encinas*, No. 06-CR-01708-H, 2009 WL 3088394, at *5 (S.D. Cal. Sept. 22, 2009), *aff'd*, 430 F. App'x 582 (9th Cir. 2011) (passenger lacked standing to challenge the search of the car, but had standing to challenge the traffic stop as a seizure); *United States v. Marcum*, 797 F. App'x 278, 281 (9th Cir. 2019).

Mr. Spriggs's False Arrest and False Imprisonment claims challenge the traffic stops as unlawful seizures, asserting that the officers could not have relied on the alleged window tint as a basis for reasonable suspicion or probable cause to conduct the traffic stop. (*SAC* at 8, ¶ 22) ("At the time of PLAINTIFF'S arrests and detentions during both incidents, [the officers] had no probable cause to believe that PLAINTIFF had committed a crime."). The SAC alleges that during the two traffic stops, Mr. Spriggs was pulled over for "illegally tinted windows." (*SAC* at 3, ¶ 11; 4, ¶ 12.) However, the SAC adds

that "the tinting on the vehicle was not illegal," an allegation that the Court must accept as true for purposes of the current motion. (*Id.*) *See Keates v. Koile*, 888 F.3d 1228, 1235 (9th Cir. 2018) ("[W]hen a district court dismisses a complaint for failure to state a claim . . . [it] consider[s] whether the complaint alleges sufficient facts, taken as true, [] support the claim . . . .").

Regardless of whether Mr. Spriggs was a passenger or if he owned the car, he has standing to challenge whether the traffic stops were supported by reasonable suspicion or probable cause. Therefore, the City's motion to dismiss the first two causes of action is denied.

### IV. MONELL LIABILITY

Under *Monell v. Dep't of Soc. Servs. of City of New York*, municipalities such as the City cannot be held vicariously liable under Section 1983 for the actions of their employees. 436 U.S. 658, 692 (1978). Instead, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).

Thus, to be liable under Section 1983 for a *Monell* claim, a plaintiff must show that either: (1) "a [municipal] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy"; or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Mendoza v. County of San Bernadino*, 2020 WL 2066142, at *6 (C.D. Cal. Feb. 21, 2020) (*quoting Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).

//
//

### i. ANALYSIS

Mr. Spriggs asserts several *Monell* claims against the City for Failure to Properly Screen and Hire (*SAC* at 9); Failure to Properly Train (*id.* at 10); Failure to Properly Supervise and Discipline (*id.* at 11); and an Unconstitutional Practice or Policy (*id.* at 9–12.) For the same reasons as stated in this Court's prior order [Doc. 13], Mr. Spriggs has failed to state valid *Monell* claims. *See Spriggs v. City of San Diego*, No. 24-CV-01006-W-KSC, 2024 WL 4469218, at *1 (S.D. Cal. Oct. 9, 2024). In that order, this Court recognized two specific deficiencies with Mr. Spriggs's claims. First, Mr. Spriggs had failed to demonstrate a constitutional violation, as required under 42 U.S.C. § 1983. However, the amendments made in the SAC plausibly state a claim that Mr. Spriggs's Fourth Amendment rights were violated. Therefore, one of the issues with the Complaint has been resolved.

The second problem was that Mr. Spriggs had failed to demonstrate what he believes is deficient about the City's screening/hiring, training, supervision/discipline practices, or allege any facts demonstrating a custom, policy, or practice of SDPD officers improperly acting without probable cause or reasonable suspicion. The constitutional issue Mr. Spriggs presents in the SAC is an alleged systemic problem of SDPD officers initiating traffic stops without reasonable suspicion or probable cause. However, as explained in the prior order, the facts alleged in the SAC do not support that conclusion.

Mr. Spriggs cites several SDPD policies in the SAC, but their inclusion is to no avail. Those policies include: (1) searches and stops for those on probation cannot be arbitrary, capricious, or harassing; (2) traffic policies must be policed equally and fairly; and (3) police must adhere to principles of reasonable suspicion and probable cause to reduce and eliminate bias in policing. (*SAC* at 7, ¶ 17.) Then, Mr. Spriggs asserts that the policies are either "ineffective, are being ignored, or there are failures in training, hiring, and/or retention of officers." (*Id.*) While unclear from the SAC, Mr. Spriggs appears to be asserting a *Monell* claim based on deliberate indifference. To prevail on a

deliberate indifference claim, he must show (1) inadequate training and (2) "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted) (bracket in original). However, in *Connick*, the Supreme Court explained

> 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

*Id.* at 62 (internal citations omitted).

In order to demonstrate a municipality's policymakers had notice that their training program was inadequate, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' . . . ." *Id.* at 62. For a single constitutional violation to trigger government liability, the violation must be highly predictable and the obvious consequence of an inadequate training program. *Id.* at 63–64.

Here, Mr. Spriggs has done nothing more than name various SDPD policies with the statement "given PLAINTIFF'S experience and the experience of scores of other citizens of color, it is clear that SDPD's policies are ineffective, are being ignored, or there are failures in training, hiring, and/or retention of officers." (*SAC* at 7, ¶ 17.) However, these allegations are conclusory and not supported by facts alleged in the SAC. To prevail, Mr. Spriggs would have to point to specific deficiencies in the policies or their implementation and allege facts demonstrating the City was on notice of those deficiencies. *See Piccini v. City of San Diego*, No. 21-CV-01343-W-KSC, 2022 WL 2788753, at *3 (S.D. Cal. July 15, 2022).

Mr. Spriggs also points to various studies and statements to support his *Monell* claims, including:

- Senate Bill 50 ("the Bill) in California aimed to prohibit police officers from stopping or detaining a driver for a low-level infraction, unless an independent

basis for the traffic stop exists. (*SAC* at 4, ¶ 8.) A statement by the Bill's author that "Black, Latinx, Native Hawaiian, and Pacific Islander Californians are more likely to be subject to pretextual stops than their white counterparts . . . ." (*Id.*)

- Research for the Bill indicating that "pretext stops" have failed to "meaningfully improve safety." (*Id.* at 5, ¶ 9.)
- A San Diego State University study of the SDP showing that Black and Hispanic people are more likely to be stopped and questioned. (*Id.* at ¶ 10.)
- An NBC San Diego study showing that Black people are five times more likely to be prosecuted for minor offenses. (*Id.* at ¶ 11.)
- The National Justice Database City Report on the SDPD, finding that Black citizens made up 14.8% of all people who experienced traffic stops from 2017 to 2020, and when stopped, Black people were 2.5 times more likely to be searched than White people. (*Id.* at 5–6, ¶ 12.)
- The Police Scorecard found that the SDPD engaged in discriminatory policing, specifically that Black people were more than twice as likely to be stopped than White people. (*Id.* at 13–14.) Additionally, the SDPD was more likely to search, arrest, and use force against Black people than White people. (*Id.*)

While these statistics tend to show that SDPD might engage in racially discriminatory practices, the constitutional issue the SAC raises is whether Mr. Spriggs was lawfully seized under the Fourth Amendment. To that end, these statistics do not show that the SDPD has a practice of pulling people over without reasonable suspicion or probable cause. As explained in the prior order, "[t]o be clear, the Court is *not* holding the kinds of studies Plaintiff cites can *never* be used to establish a pattern or practice for *Monell* claims or put municipalities like the City on notice of constitutionally deficient practices; but that as alleged here, these specific studies do not link the racial disparity in stops, searches, and arrests to any of the conduct Plaintiff complains of . . . [to] stops,

searches, and arrests without reasonable suspicion or probable cause." *Spriggs v. City of San Diego*, No. 24-CV-01006-W-KSC, 2024 WL 4469218, at *7 (S.D. Cal. Oct. 9, 2024).

Although Mr. Spriggs has failed to allege what specifically was deficient about the cited policies or allege facts showing the City was on notice of those deficiencies, that is not to say that he could not do so in an amended complaint. Therefore, leave to amend should be granted.

### V.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Mr. Spriggs also asserts an intentional infliction of emotional distress (IIED) claim against all defendants. To establish a valid IIED claim, a plaintiff must show (1) extreme and outrageous conduct by a defendant with the intention, or reckless disregard of the probability, of causing emotional distress; (2) that the plaintiff suffered severe or extreme emotional distress; and (3) that emotional distress was the actual and proximate cause of the defendant's conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1052 (2009). However, "outrageous conduct" is conduct that is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1991).

Mr. Spriggs has failed to adequately plead a claim for IIED, because the SAC fails to demonstrate that he has suffered severe or extreme emotional distress. The SAC alleges in conclusory terms that "PLAINTIFF suffered severe emotional distress . . . ." (*SAC* at 14, ¶ 59.) Without more facts, Mr. Spriggs has merely restated one of the elements of his IIED claim, falling short of the pleading requirement. *See Bell Atl. Corp.*, 550 U.S. at 558–59. Because Mr. Spriggs has failed to adequately plead the elements of an IIED claim, it will be dismissed with leave to amend.

//
//
//

## VI. BANE ACT CLAIM

Mr. Spriggs also asserts a claim under the California Bane Act. The Bane Act creates civil liability for anyone who "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals or rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1. To successfully plead a claim under the Act, a plaintiff must show (1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) that the interference or attempted interference was by threats, intimidation, or coercion. *Sanchez v. Cnty. of Los Angeles*, No. CV201146DSFPVCX, 2020 WL 9074714, at *9 (C.D. Cal. Apr. 28, 2020).

The City has moved to dismiss the Bane Act claim on the grounds that Mr. Spriggs has failed to allege misconduct involving threats, intimidation, or coercion independent of any threats, intimidation, or coercion inherent in the underlying constitutional violation. (*Mtn.* at 14:9–11.) However, California courts have taken the position that "[n]othing in the text of the statute requires that the offending 'threat, intimidation, or coercion' be 'independent' from the constitutional violation alleged." *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044–45 (9th Cir. 2018) (citing *Cornell*, 17 Cal. App. 5th at 801–02).

Because the Bane Act does not require Mr. Spriggs to allege threats, intimidation, or coercion independent from the constitutional violation alleged, the City's motion to dismiss the claim will be denied.

//
//
//

## VII. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the City's Motion [Doc. 15]. The Motion is **DENIED** as to claims 1, 2, and 8. Claims 3–

7 are **DISMISSED WITH LEAVE TO AMEND**.  However, no further opportunities will be given to amend the complaint after this final attempt.

**IT IS SO ORDERED.**

Dated:  February 12, 2025

Hon. Thomas J. Whelan
United States District Judge